FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

00 APR 27  AM II: 55

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **CLARENCE OZIER, et al.,** | ] | |
| Plaintiff(s), | ] | |
| vs. | ] | CV-98-N-2961-W |
| **STATE FARM FIRE AND CASUALTY CO, INC., et al.,** | ] | |
| Defendant(s). | ] | |

ENTERED

APR 2 7 2000

### Memorandum of Opinion

### I. Introduction.

The plaintiffs, Clarence and Sandra Ozier, ("Ozier") bring this action against State Farm and Fire Casualty Co., Inc., ("State Farm") in three counts: (1) breach of an insurance contract for failure to pay a claim; (2) bad faith failure to pay a claim; and (3) negligent hiring and supervision of Arthur Pruet, Jr ("Pruet").[1] Presently the court has for consideration State Farm's motion for summary judgment that was filed January 18, 2000 (Docket Entry #21). The motion has been briefed by both parties and was submitted for decision on February 21, 2000. Upon due consideration and for the reasons stated, the motion for summary judgment will be granted as to all claims and the action will be dismissed with prejudice.

---

[1] In its February 16, 1999, Order denying the plaintiffs' motion to remand, the Court determined that defendant Arthur Pruet, Jr. was fraudulently joined and dismissed him from this action. In the June 2, 1999, Order the court granted State Farm General Ins. Co., Inc.'s motion to dismiss.



## II. Statement of Facts.[2]

The plaintiffs, the Oziers, own a residence located at 15393 Choctaw Trail, Northport, Alabama. On or about June 1, 1994, they purchased a State Farm Homeowners Extra insurance policy to provide coverage for their home. It is undisputed that the policy was in effect during November of 1997, when the plaintiffs incurred water damage in the basement of their home.

State Farm has presented evidence that the damage was caused by rainwater that seeped into the basement. According to the report submitted to State Farm by Joel Wehrman ("Wehrman"), P.E. of JADE Engineering:

> It is apparent that a large quantity of water which is shed from the roof is deposited on the ground next to the foundation at this corner – where it collects next to the foundation wall of the Ozier home, seeps into the ground, presses against the basement wall, and eventually permeates through the walls.

(Defense Ex. 8, pp. 4-5). The plaintiffs maintain that once it rains, the water enters the basement at a rapid rate (Defense Ex. 1 p. 79; Defense Ex. 2 pp. 76-77). Additionally, plaintiffs' expert Victor Apodaca ("Apodaca") agreed with the majority of Wehrman's conclusions, differing only in his testimony that based upon his personal observations and the information provided by the Oziers, the rainwater was entering at or above ground level. (Defense Ex. 9 p. 107-110).

---

[2] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994), *cert. denied, USX Corp. v. Cox*, 114 S.Ct. 900 (1995).

2

The plaintiffs purchased their policy from the Arthur Pruet Agency, a sole proprietorship owned by Arthur Pruet. According to Pruet, he has a "Double A" contract to sell and service products of State Farm Insurance Company. Generally, under such contract Pruet is relegated to selling only State Farm Insurance products. However, he has received express permission from State Farm to sell Baldwin Mutual Insurance products as well. State Farm compensates Pruet by commissions upon his selling or renewing policies.

Shortly after the first water incident, Mr. Ozier called the Arthur Pruet Agency and talked with a "lady" about what had happened.[3] According to Ozier, he described the condition of the basement to Martin wherein she responded that she needed to talk with Pruet. Ozier contends he heard Martin accurately relay the information she had been told by him to Pruet. Thereafter, Martin returned to the line and informed Ozier that the incident was not covered by his policy.

A few days after the first phone call, Mr. Ozier called Ms. Martin back to inform her that it appeared that water was in the sheetrock and tile, and that the basement bedroom and furniture had also suffered water damage. Again, after consulting with Pruet, Martin told Ozier that the damage was not covered under the homeowners policy because it was the result of seepage or flooding. However, Ozier does not recall wether he asked Martin if they would send someone out to look at the damage, or if he explicitly told her that he was making a claim. After this second conversation, Ozier changed insurance companies.

---

[3] Mr. Ozier does not remember the name of the person he spoke with at the Arthur Pruet Agency. However, Pruet contends that Ozier spoke with Pam Martin, a licensed insurance agent employed by the Agency. For summary judgment purposes, the evidence is only that Ozier spoke with Ms. Martin.

3

In 1998, the plaintiffs hired an attorney to represent them in this matter. On June 12, 1998, counsel for plaintiffs wrote Mr. Pruet a letter reciting the basic facts of this matter and his desire that the matter might be settled amicably. Although it is not entirely clear, the record indicates that between the time of this letter and October 1, 1998, State Farm conducted an investigation and site inspection of the plaintiffs' property. On October 1, 1998, State Farm notified Mr. Hinote, counsel for plaintiffs, that the damage resulting from this cause of loss was not covered by his client's policy. On October 23, 1998, the plaintiffs filed a complaint in the Circuit Court of Tuscaloosa, County, Alabama. A notice of removal was filed by State Farm on November 27, 1998, and the plaintiffs' motion to remand was denied on February 16, 1999 (Docket Entry #14).

### III.   Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Where the nonmoving party will bear the burden of proof at trial, there is no requirement, "that the moving party support its motion with affidavits or other similar

materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323. "Instead, the moving party simply may '"show[ ]"--that is, point[ ] out to the district court--that there is an absence of evidence to support the nonmoving party's case.'" *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437-38 (11th Cir.1991) (*en banc*) (quoting *Celotex*, 477 U.S. at 324); *see also Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (same); *Young v. City of Augusta*, 59 F.3d 1160, 1170 (11th Cir. 1995). However, "it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark v. Coats and Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party must instead make an "affirmative showing" that crucial evidence is missing "by reference to any combination of the following: pleadings; deposition testimony of a party or its witnesses; affidavits; responses to interrogatories . . . ; requests for admission . . . ; and any other exchanges between the parties that are in the record." *Cheatwood v. Roanoke Industries*, 891 F. Supp. 1528, 1533 (N.D. Ala. 1995) (Hancock, J.).

"Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial. If the moving party shows the absence of a triable issue of fact by either method, the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial." *Four Parcels of Real Property*, 941 F.2d at 1437-38 (11th Cir.1991).

At this stage, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"

*Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. *Id.* at 324. The nonmoving party must make a specific, affirmative showing that a genuine factual dispute exists. If the required showing is not made, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

After the plaintiff has responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very

6

close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV.   Discussion.

### A.   Breach of Contract.

The plaintiffs contend the defendant breached its contract of insurance with them when it denied their claim. The defendant claims the loss suffered to the plaintiffs' home is specifically excluded under the terms of the policy it issued to the plaintiffs. *State Farm Fire and Casualty Company's Initial Submission in Response to Exhibit D of the Court's Order*, at 8 (hereinafter *Defendant's Brief*). The policy contains the following exclusions

**SECTION I - LOSSES NOT INSURED**

* * *

2.  **We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event** to produce the loss; or (d) whether the **event occurs suddenly** or gradually, involves isolated or widespread damage, **arises** from natural or external forces, or occurs as a result of any combination of these:

    * * *

c.  Water Damage, meaning:

    (1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

    (2) water from outside the plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

    (3) natural water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

3.  We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of loss:

    * * *

b.  defect, weakness, inadequacy, fault or unsoundness in:

    (1) planning, zoning, development, surveying, siting;

8

>       (2)   design, specifications, workmanship, construction, grading, compaction;
>       (3)   materials used in construction or repair; or
>       (4)   maintenance;
> of any property (including land, structures, or improvements of any kind) whether on or off the residence premises.

(Defense Exhibit "3", Homeowners Extra Policy, pp. 11-12).

Insurance contracts, like other contracts, are construed to give effect to the intention of the parties. *Hall v. American Indemnity Group*, 648 So. 2d 556, 558 (Ala. 1994). When a trial court is faced with an unambiguous policy, its duty is to determine the meaning of the policy terms by the plain meaning of the policy. *See Tate v. Allstate Ins. Co.*, 692 So. 2d 822, 824 (Ala. 1997); *City of Rainsville v. State Farm Mut. Auto Ins. Co.*, 716 So. 2d 710 (Ala. Civ. App. 1998). The directive is clear that "[c]ourts may not rewrite the terms of a policy or interpret unambiguous policy language so as to provide coverage that was not intended by the parties." *Canal Ins. Co. v. Old Republic Ins. Co.*, 718 So. 2d 8, 12 (Ala. 1998).

However, in circumstances involving contract terms which are ambiguous, the court should adopt the interpretation most favorable to the insured. *Green v. Merrill*, 308 So. 2d 702, 704 (Ala. 1975); *See Garrett v. Alfa Mutual Ins. Co.*, 584 So. 2d 1327, 1330 (Ala. 1991)(recognizing that insurance companies have the right to limit their liability, but that when doubt exists as to coverage, the language used will be construed liberally for the benefit of the insured and strictly against the insurance company). "Language is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time." *Canal Ins. Co.*, 718 So. 2d at 12. It is the province of the

court, not the jury, after considering the policy in its entirety, to determine if it is uncertain or ambiguous in its terms.

The language of the Ozier's insurance policy is not ambiguous. Its terms are clear, and they must be accorded their plain and ordinary meaning. The policy excludes coverage for loss due to "water damage," and more specifically excludes loss due to damage by "surface water." Accordingly, if the damage to the Ozier's basement was caused by surface water, as State Farm contends, then the policy does not afford coverage for the plaintiffs' loss.

The crux of this case is whether, given the facts of this particular matter, an "innundation of rainwater" is somehow distinct from surface water. The defendants contend that the water that entered the basement was "surface water" under the widely accepted definition of that term and consequently, falls under the water damage exclusion. The plaintiffs argue that the damage to their basement was caused by an "innundation of rainwater," an event not explicitly listed under the contract definition of water damage. While it appears to the court that the plaintiffs are trying to create a causation issue for a jury to decide, the court considers the argument a mere exercise in semantics.

Although it appears that the Alabama Supreme Court has never formally defined surface water, there are a number of decisions from other courts which serve as persuasive, and in some cases, binding precedent. In *Barber Pure Milk Co. v. Young*, 81 So. 2d 324, 327 (Ala. Civ. App. 1954), a case concerning the flow of water from the defendants' property to the plaintiff's property, the court of appeals defined surface water as "water casually on land from natural precipitations and flowing in no fixed channel."

10

Similarly, the Georgia Court of Appeals depicted the following as the "widely accepted" definition of surface water:

> [s]urface water is water which is derived from falling rain or melting snow, or which rises to the surface in springs, and is diffused over the surface of the ground, while it remains in such diffused state and which follows no defined course or channel, which does not gather into or form a natural body of water, and which is lost by evaporation, percolation, or natural drainage.

*Hirschfield v. Continental Casualty Co.*, 405 S.E. 2d 737, 738 (Ga. Ct. App. 1991). In a flood exclusion case, the Sixth Circuit defined surface water as "water from melted snow, falling rain, or rising springs, lying or flowing naturally on the earth's surface, not gathering into or forming any more definite body of water than a mere bog, swamp, slough or marsh." *Front Row Theatre, Inc. v. American Mfr's. Mutual Ins. Co.*, 18 F.3d 1343, 1347 (6th Cir. 1994). The Court of Appeals went on to further describe surface water as that which is "not of a substantial or permanent existence, has no banks, and follows no defined course or channel." *Id.*

Determining the meaning of the policy terms by the plain meaning of the policy, the court concludes that the basement damage was caused by surface water. The evidence presented by both parties clearly and unequivocally demonstrates that the water which reached the Ozier's basement was from falling rain, lying naturally on the earth's surface. Moreover, the evidence established that this type of water entered the basement and caused the damage. According to Wehrman, water is shed from the roof and deposited on the ground next to the foundation, where it collects, seeps into the ground, presses against the wall, and then permeates through the walls. (Def. Ex. 8 p. 4). The plaintiffs'

11

expert, Apodaca, explicitly concurred with these findings. (Def. Ex. 9 pp.96-99). Moreover, the only significant disagreement between the two experts does not concern the presence of water lying naturally on the earth's surface, but rather, whether water entered the Oziers' basement at or below the ground surface level. In other words, there is no dispute that the rainwater was at some point lying naturally on the earth's surface. Finally, neither of the plaintiffs presented testimony in which the court could infer that water entering the basement was something other than surface water.

Based upon the foregoing, the plaintiffs have failed to articulate any factual or legal basis for which the court could distinguish the "innundation of rainwater" alleged to have occurred from surface water. Thus, the court determines that the damages sustained by the Oziers was caused by surface water and are excluded from coverage by the express terms of the Ozier's insurance policy with State Farm. To hold otherwise would rewrite the terms of the policy and interpret unambiguous policy language so as to provide coverage that was not intended by the parties. Accordingly, State Farm is entitled to summary judgment as to the plaintiff's cause of action for breach of contract.

### B. Bad Faith.

Ordinarily, in order to succeed on their bad faith claim, the plaintiffs must prove the defendant breached its insurance contract with them. *National Security Fire and Casualty Co. v. Bowen*, 419 So. 2d 179, 183 (Ala. 1982)(holding that breach of contract is a necessary element in a bad faith failure to pay claim). Because the defendant did not breach its contract with the plaintiffs, no action for bad faith will lie. Thus, the defendant's motion for

12

summary judgment on the bad faith failure to pay claim will be granted, and the plaintiffs' bad faith claim will be dismissed with prejudice.

### C. Negligent Hiring and Supervision.

The plaintiffs allege that as a direct and proximate cause of State Farm's negligent hiring and supervision of Arthur Pruet, the plaintiffs' homeowners claim was improperly denied. The defendant contends summary judgment is warranted based primarily on the fact that the damage was not covered, thus Pruet acted properly. Under Alabama law, an employer is liable for negligent hiring and supervision only when the plaintiff can prove the employer knew or should have known of the employee's inadequacies. *Mardis v. Robbins Tire and Rubber Co.*, 669 So. 2d 885 (Ala. 1985). Here, it has been established that Pruet was correct in communicating his opinion that the damage was not covered. As such, it can hardly be said that his conduct was inadequate. Nevertheless, even if Pruet was acting in bad faith, under the negligent hiring/supervision theory the plaintiff must show negligence on the part of State Farm. Negligence can be shown by specific acts of incompetence by the employee that were known, or should have been known by the master. In light of the defendant's argument that there is no evidence to indicate negligence on the part of State Farm, the plaintiffs have failed to create a genuine issue of material fact showing otherwise. Accordingly, the defendant is entitled to summary judgment as to the plaintiffs' negligent supervision/hiring claim.

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this __27th__ of April, 2000.

_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

14